IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:04CR478 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| GORDON J. GIVENS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Gordon Givens is before the court for resentencing after remand from the Eighth Circuit Court of Appeals (the "Eighth Circuit"). *United States v. Givens,* 443 F.3d 642 (8th Cir. 2006); Filing No. 32, Eighth Circuit Opinion. The Eighth Circuit found that the sentence this court previously imposed on defendant Givens was unreasonable and remanded for resentencing. *Givens*, 443 F.3d at 645. It found that this court erred in relying on the defendant's post-offense rehabilitation, the rural economy, and the defrauded bank's conduct as grounds for departure under the United States Sentencing Guidelines ("Guidelines"). *Id.* at 645-46. The court acknowledged that it "could foresee sufficient reasons for departing from the suggested sentence," but questioned the extent of departure. *Id.* at 646.

I. BACKGROUND

A. First Sentencing

Pursuant to a plea agreement, Givens entered a plea of guilty to bank fraud in violation of 18 U.S.C. § 1344. Filing No. 3. In the plea agreement, the parties agreed that relevant conduct and loss to the bank was more than $400,000 and less than $1,000,000, thus agreeing to a 14-level increase to the base offense level of 6 under U.S.S.G. §

2B1.1(b)(1)(H).  *See* Filing No. 6, Plea Agreement at 1.  Prior to sentencing, the United States Probation Office ("Probation Office") prepared a presentence investigation report ("PSR").  Filing No. 18, PSR (sealed).  The PSR, consistent with the plea agreement, determined that Givens's offense level was 17 (representing offense level 20 less 3 levels for acceptance of responsibility), his criminal history category was I, and his sentencing range under the Guidelines was 24 to 30 months, placing him in Zone D of the sentencing table.  *Id.* at 6.  Although the Guidelines do not authorize a noncustodial sentence for offenses falling in Zone D, the Probation Office recommended a sentence of time served with five years of supervised release, with a six-month period of home confinement as part of the supervised release.  *See Givens,* 443 F.3d at 644; Filing No. 18, Sentencing Recommendation at 1.  The recommendation was premised in part on Givens's likely incarceration on a fourteen-count state indictment charging various livestock misbranding offenses.  *Id.*; *see also* PSR at 7.  The Probation Office found the conduct underlying the state charge was related to the conduct on the federal charge.  *Id.*; PSR at 7.  It was also noted that Mr. Givens is responsible for assisting with the care of his elderly parents, both of whom are in care facilities and one of whom has dementia.  Sentencing Recommendation at 2.

This court sentenced Givens to time served, followed by five years of supervised release, including, as a special condition of supervised release, a twelve-month period of home confinement under electronic monitoring.  Filing No. 19, Judgment in a Criminal

Case at 2-4. Givens was also ordered to perform 80 hours of community service and to pay additional restitution in the amount of $1,220,875 to the defrauded bank.[1] *Id.* at 5.

B. Resentencing

The parties relied on the same PSR for resentencing. Neither party objects to its facts or calculations. At the resentencing hearing, Givens moved for a downward departure or variance. See Filing No. 41, Resentencing Hearing Transcript ("Hr'g Tr.") at 7-14. The court ordered amendment of the PSR to reflect that Givens was convicted of one count of livestock misbranding in state court. *Id.* at 6. He was sentenced to one year of incarceration and served six months in jail to fulfill that sentence.[2] *Id.* at 6. Further, defendant has satisfied the restitution and completed the community service previously ordered by this court. *Id.* at 4, 24-25; Hr'g Ex. 1. At the time of the hearing, Givens was nearing completion of the one-tear term of home confinement ordered by this court. *Id. at 25.*

Givens argued that he should be credited for the time he served on the state charge under U.S.S.G. § 5G1.3 because the conduct underlying the state court conviction was related to the offense of conviction in this court. Alternatively, he moved for a downward departure on that ground. The government argued that the state court sentence should not be considered related to the present charge. It also contended that the court should not give consideration to the period of time Givens spent on house arrest. Further, the

---

[1]The bank had achieved a partial recovery through the sale of Givens's assets that had been pledged as security for the loan. PSR at 5.

[2]Nebraska affords day-for-day credit for good time. Hr'g Tr. at 30. *Id*. at 30.

3

government argued that, if factored into his sentence, the state court conviction should be counted in the calculation of Givens's criminal history category.

## II.  DISCUSSION

Under *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are no longer a mandatory regime. *United States v. Gall,* 446 F.3d 884, 888 (8th Cir. 2006). "Instead, the district court must take the advisory guidelines into account together with other sentencing factors enumerated in 18 U.S.C. § 3553(a)." *Id.*  After *Booker,* there are essentially three steps to determining an appropriate sentence:  first, the sentencing court should determine the applicable Guidelines range without consideration of any Guidelines departure factors; second, the court, where appropriate, should consider the departure provisions in the Guidelines to determine the resulting Guideline range; and third, the court should consider the other statutory sentencing factors set forth 18 U.S.C. § 3553 to determine whether to impose the Guidelines sentence, as ascertained in the prior steps, or a nonguidelines sentence driven by the other statutory considerations.  *United States v. Sitting Bear,* 436 F.3d 929, 934-35 (8th Cir. 2006); *see also United States v. Kiertzner*, 460 F.3d 988 (8th Cir. 2006) (stating that sentencing courts must first calculate the applicable advisory guideline range, including any traditional departures or reductions, and use that range as one of the factors under § 3553(a) to determine an overall, reasonable sentence).  The appropriate sentencing range under the Guidelines thus remains an important sentencing factor.  *United States v. Haack,* 403 F.3d 997, 1002-03 (8th Cir.), *cert. denied*, 126 S. Ct. 276 (2005); *see also United States v. Mashek*, 406 F.3d 1012, 1016 (8th Cir. 2005) (stating that the Guidelines range is the critical starting point in imposing a sentence).  Under the Guidelines, imprisonment is required for a Zone D

4

offense. U.S.S.G. § 5C1.1(f); *United States v. Abboud,* 273 F.3d 763, 767 n.3 (8th Cir. 2001).

The Guidelines require that the sentencing court must adjust the sentence of a defendant to account for an undischarged term of imprisonment on a related offense that has formed the basis for an increase in his offense level. U.S.S.G. § 5G1.3 (b) (1) & (2) (mandating either a credit for time served or concurrent sentences); *United States v. Meyers,* 401 F.3d 959, 962 (8th Cir. 2005). The district court has wide discretion to impose either concurrent or consecutive sentences in unrelated cases. *See* U.S.S.G. § 5G1.3 (c); *United States v. Mathis,* 451 F.3d 939, 940 (8th Cir. 2006); *United States v. Burch*, 406 F.3d 1027, 1030 (8th Cir. 2005) (noting that the choice between applying § 5G1.3 (b) or § 5G1.3 (c) usually turns upon the extent to which the offenses in question are related, and such relatedness inquiries are necessarily fact-sensitive). "The objective is 'to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity.'" *United States v. Atteberry,* 447 F.3d 562, 564 (8th Cir. 2006) (*quoting* U.S.S.G. § 5G1.3, comment, (n.3)). By its terms, § 5G1.3(b) applies exclusively to undischarged sentences and not to sentences that were fully served prior to sentencing. *United States v. Otto,* 176 F.3d 416, 418 (8th Cir. 1999).

The Guidelines expressly prohibit departures based on certain factors and discourage departures in consideration of other factors. *Compare* U.S.S.G. § 5H1.10 (prohibiting consideration of race, sex, national origin, or creed) *with* § 5H1.6 (discouraging consideration of family ties and responsibilities). In considering departure, a district court must decide whether the Sentencing Commission has forbidden, encouraged, or discouraged a departure based on a certain feature. *Koon v. United States,* 518 U.S. 81,

95-96 (1996); U.S.S.G. § 5K2.1-5K2.23 (enumerating encouraged factors). If the special factor is an encouraged factor, the court is authorized to depart if the Guideline applicable to the offense does not already take it into account. *United States v. Lightall*, 389 F.3d 791, 796 (8th Cir. 2004).

Departures are also appropriate "if the sentencing court finds that there exists an aggravating or mitigating circumstance 'of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.'" *United States v. Chase,* 451 F.3d 474, 482 (8th Cir. 2006) (*quoting* U.S.S.G. § 5K2.0). Sentencing courts are to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. *Id.* When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, a court may consider whether a departure is warranted. *Id.*; U.S.S.G. § 1A1.1, cmt. n.4(b). Discouraged factors, or encouraged factors already taken into account by the Guidelines, can be the basis for a departure "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Lightall,* 389 F.3d at 796; *United States v. Hadash,* 408 F.3d 1080, 1083 (8th Cir. 2005) (holding, post-*Booker*, that a district court can depart without abusing its discretion if the case falls outside the heartland of cases in the Guideline at issue). A sentencing court has authority to depart downward in order to give a defendant credit for time served on his expired state sentence. U.S.S.G. § 5K2.23; *see also United States v. O'Hagan,* 139 F.3d 641, 657-58 (8th Cir. 1998) (providing for such a departure before § 5K2.23 was added to the Guidelines).

6

Once the district court calculates the advisory Guidelines range, including departures, it "may then impose a sentence outside the range in order to 'tailor the sentence in light of the other statutory concerns' in § 3553(a)." *United States v. Gall,* 446 F.3d at 889 (8th Cir. 2006) (*quoting Booker*, 543 U.S. at 245-46 (2005)). The statutory concerns expressed in § 3553(a) require the sentencing court to "'impose a sentence sufficient, but not greater than necessary,' to comply with sentencing goals considering the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for the sentence to provide justice, deterrence, and other goals of punishment." *United States v. Pappas,* 452 F.3d 767, 773 (8th Cir. 2006); *see* 18 U.S.C. § 3553 (a)(2)(A)-(C). The court must also consider the need to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(C)-(D).

A sentence within the Guidelines range is presumptively reasonable, but "it does not follow that a sentence outside the guidelines range is unreasonable." *United States v. Myers,* 439 F.3d 415, 417 (8th Cir. 2006). A nonguidelines sentence "may be unreasonable if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." *Haack*, 403 F.3d at 1004. In certain "highly unusual circumstances," a defendant may rebut the presumption of reasonableness. *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006) (stating that "to consider the guidelines is not to be ruled by

them"). District courts <u>must</u> vary from the Guidelines range where other § 3553 factors would render a sentence within the Guidelines range unreasonable. *Id.* (emphasis added).

The district court's reasonableness determination will be reviewed for abuse of discretion. *Id.* Sentences varying from the Guidelines range are reasonable if the district court offers justification based on the factors in 18 U.S.C. § 3553(a). *United States v. Rogers,* 448 F.3d 1033, 1035 (8th Cir. 2006). Although the court "need not categorically rehearse each factor, 'the further the judge's sentence departs from the guidelines sentence, the more compelling the section 3553(a) justification must be.'" *Id.* (*quoting Givens,* 443 F.3d at 646). "How compelling that justification must be is proportional to the extent of the difference between the advisory range and the sentence imposed." *Lazenby,* 439 F.3d at 932; *see also United States v. Larrabee*, 436 F.3d 890, 892 (8th Cir. 2006) (noting that as the size of a variance from the advisory Guidelines sentence grows, so too must the reasons that warrant it). Extraordinary variances must be supported by extraordinary circumstances.[3] *United States v. Meyer,* 452 F.3d 998, 1000 (8th Cir. 2006). Also, factors that were discouraged or prohibited departure factors under the mandatory Guidelines may be considered in applying the § 3553(a) factors under *Booker*. *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006); *United States v. Robinson,* 454 F.3d

---

[3]Sentences that vary from the Guidelines sentencing range by over 50 percent have been characterized as extraordinary. *United States v. Likens,* — F.3d —, — 2006 WL 2707648 (8th Cir. Sept. 22, 2006) (reversing 100% variance); *Rogers,* 448 F.3d at 1035 (reversing 76% variance); *United States v. Meyer,* 452 F.3d 998, 1001 (8th Cir. 2006) (affirming a 50% upward variance and holding a variance of 50% is extraordinary); *see also United States v. Bryant,* 446 F.3d 1317, 1319-20 (8th Cir. 2006) (characterizing a 57% variance as extraordinary); *Larrabee,* 436 F.3d at 892-93 (holding a 54% variance is extraordinary); *but see United States v. Lee,* 454 F.3d 836, 839 (finding a variance of 54% was large, but "neither unique nor necessarily unreasonable"). *United States v. Maloney*, 466 F. 3d 663, 668 (8th Cir. 2006) (advocating considering numbers of offense levels traversed by a variance). The United States Supreme Court has granted certiorari on the issue of whether it is "consistent with *United States v. Booker* to require that a sentence which constitutes a substantial variance from the Guidelines be justified by extraordinary circumstances." *See Claiborne v. United States*, 2006 WL 2187967 (Nov. 3, 2006) (No. 06-5618).

839, 842 (8th Cir. 2006) (recognizing that "pre-*Booker* departures and post-*Booker* variances are not the same" and that there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone").

### III.  ANALYSIS

#### A.  Guidelines Sentence

The PSR, to which neither party objected, establishes that Givens's Guidelines sentencing range is 24 to 30 months, based on an offense level of 17 and a criminal history category of I.  The court grants Givens's motion for downward departure.  The court finds that a downward departure of six months from the low end of that range is warranted in order to give the defendant credit for time served on his related state sentence under U.S.S.G. § 5K2.23.  In making that determination, the court finds that the conduct underlying the state court conviction is related to the instant offense and was considered as relevant conduct to increase the defendant's offense level on the federal charge.[4]  Even if the conduct was unrelated, however, the court would have exercised its discretion to order that this sentence run concurrently to the state court sentence, resulting in an effective "credit" for the same amount of time.  This departure adjusts the low end of Givens's Guideline range to 18 months.

The court finds a further departure is warranted under U.S.S.G. § 5K2.0 because the timing of the state and federal sentences, in conjunction with sentencing uncertainty

---

[4]The cattle at issue in the state court action were improperly pledged as collateral for the loans that resulted in the defrauded bank's losses.  The determination of the amount of loss includes the value of that collateral.

as a result of the *Booker* decision, create a mitigating factor that takes this case outside the "heartland" of cases that the Sentencing Commission considered when formulating the guideline applicable to Givens's offense. The Guidelines became advisory shortly before Givens's first sentencing. At that time, the court did not have the benefit of subsequent Eighth Circuit case law on the issue.

At Givens's first sentencing, both the court and the Probation Office anticipated that Givens would receive some period of imprisonment on the state charge. Accordingly, the court sentenced Givens to "time served" plus a lengthy period of home confinement. The "time served" component contemplated that Givens would serve some time. Had the Guidelines remained mandatory, Givens would not have been eligible for home confinement because his sentencing range fell in Zone D. If the court had imposed a term of imprisonment, it would have been concurrent to the state sentence. Similarly, had the court imposed incarceration, it would not have imposed home confinement. Whatever the propriety of home confinement, the fact remains that, in addition to a state court sentence of one year in jail, Givens has served a full year of home confinement.

Home confinement is a significant restriction on a defendant's activities that is authorized under the Guidelines in certain circumstances. See U.S.S.G. §§ 5C1.1(c) (regarding sentences in Zone B) & (d) (regarding sentences in Zone C); 5F1.2. When home confinement is allowed, it substitutes for incarceration on a day-for-day basis. U.S.S.G. §5C1.1(e)(3). Also, when allowed, the Guidelines generally permit a sentence to be split evenly between incarceration and home or community confinement. *See* U.S.S.G. § 5C1.1 (d)(2). The court thus finds Givens is entitled to a downward departure under U.S.S.G. § 5K2.0 of one year to account for the time he served on home

confinement. The low end of Givens's resulting Guidelines range is six months. The court finds a further departure is necessary to account for differences in the assessment of credit for good time in the state and federal systems had the defendant been sentenced once and not in the piecemeal fashion of this case. Accordingly, the court will further depart to a sentence of three months.[5]

### B. Section 3553 Factors

The court finds a sentence of three months of additional incarceration is a reasonable sentence in consideration of the factors set forth in U.S.S.G. § 3553(a). The imposition of this additional period of incarceration is sufficient, but not greater than necessary, to comply with sentencing goals. In considering the nature and seriousness of the offense, the court notes that bank fraud is a serious crime. As with any white-collar crime, it is important for the court to "send a message" that the consequences for this type of crime are severe. In this case, the defrauded bank has been afforded restitution. As a result, Givens has suffered a serious, if not devastating, economic consequence. Givens has lost his home and business as a result of his conduct. He has assigned the interest he has in his parents' life insurance policies to the bank as restitution. The defendant was under no legal obligation to do so. The defendant has also suffered a significant restriction of his activities by virtue of the combination of the time he served in state custody, his period of home confinement under monitoring, and the imposition of further incarceration.

---

[5] Under Nebraska law, a defendant is awarded a day-for-day credit for good time, as opposed to the 15% credit a defendant receives for good time under federal law. A sentence of three months reflects the fact that if Givens had been sentenced in federal court to serve years of incarceration (12 months' home confinement; one year NPCC), he would have served roughly 85% of his total sentence, or 20.4 months. He has actually served 12 months' home confinement and six months with NPCC, for a total of 18 months. An additional three-month sentence equals 21 months. This is six months more than he would receive with a Guideline sentence with a concurrent state sentence.

Also, as a prominent resident of a small, rural community, Givens has suffered more embarrassment, loss of reputation, and stigma than similar defendants.  The crime was afforded a high degree of notoriety in his community.  These consequences provide just punishment and will serve to deter others from similar crimes.

With respect to Givens's history and characteristics, the court notes that defendant's history involves no other serious crimes.  He has successfully completed community service.  The court has received countless letters expressing support for Givens from members of his community.  There is no evidence that the defendant is dangerous or that he presents any risk of recidivism.  His offense involved a combination of factors that is not likely to recur.

As discussed above, the court has considered the Guidelines and has imposed a sentence, after departures, within the identified advisory Guidelines sentencing range.  Absent the departures, the low end of defendant's sentencing range was close to Zone C, which would have allowed a split sentence of half prison and half community or home confinement.  U.S.S.G. § 5C1.1(d)(2).  The government sought a sentence of 24 months.  The sentence of three months, in addition to the sentence that Givens has already served, roughly corresponds to an effective sentence of two years, split between incarceration and home confinement, concurrent to the state sentence.  Givens will serve slightly more than the same amount of overall time that he would have served under such a sentence.

In view of the defendant's satisfaction of restitution and exemplary conduct under supervision, the court finds that such a split sentence would fulfill sentencing objectives in this case.  Givens is a nonviolent offender.  He has no other criminal history.  Some period of confinement, however, is necessary to promote respect for the law.  Because Givens,

12

prior to this offense, had never been incarcerated, the additional three months of confinement should be sufficient to impress upon him the seriousness of the offense. The extent of any variance from the Guidelines sentencing range is fully supported by the unusual facts of this case and will not result in unwarranted sentencing disparity. Under the formerly mandatory Guidelines, a defendant in the same position as Givens would have served an equivalent amount of time.

A Judgment and Commitment and Statement of Reasons in accordance with this Memorandum Opinion will issue this date.

DATED this 22nd day of November, 2006.

BY THE COURT:

**s/ Joseph F. Bataillon**
Chief United States District Judge